UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEONTRAE LAWRENCE,** | Civil Action No. 18-16006 (MCA) |
| Petitioner, | |
| v. | OPINION |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

*Pro se* Petitioner Keontrae Lawrence, a prisoner confined at Thomson U.S. Penitentiary, has submitted his motion to vacate pursuant 28 U.S.C. § 2255. For the reasons explained in this Opinion, the Court denies the Motion and also denies a certificate of appealability.

I.     <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

    a. **Factual Background**

On or about September 6, 2015, in the early morning hours, Lawrence and a co-conspirator, Shaheed Blamahsah ("Blamahsah"), confronted the manager (the "Victim") of a club (the "Club") in Passaic, New Jersey. PSR ¶ 13. The robbers brandished a firearm at the Victim, who was alone in the office at the back of the Club, and demanded that the Victim open the safe and give them the key to the office. PSR ¶ 13. The robbers made death threats and ordered the Victim to the floor. PSR ¶ 13. The Victim complied. PSR ¶ 13.

Lawrence and Blamahsah then emptied the contents of two purses located in the office and emptied the contents of the safe into the purses. PSR ¶ 14. The robbers also took loose cash located on top of the safe, as well as a blue canvas bag containing cash. PSR ¶ 14. They then ordered the Victim to count down from one hundred while they closed the office door behind them

and fled the Club. PSR ¶ 14. In total, the robbers fled with approximately $26,084 in cash from the Club.    PSR ¶ 14.

The Victim provided to the police a description of the robbers, who were unmasked and wearing red shirts. PSR ¶ 15. A short while later and within a short distance of the Club, a police officer observed a stolen 2011 Land Rover speed past the officer.[1] The officer saw that the stolen car was occupied by two individuals matching the description of the robbers and attempted to stop the Land Rover. PSR ¶ 15. The robbers led the police on a high-speed car chase through Passaic, Newark, and East Orange, New Jersey. PSR ¶ 15.

With the assistance of a police helicopter, the police observed the robbers abandon the Land Rover and flee on foot. PSR ¶ 15. The robbers were not immediately apprehended. PSR ¶ 15.

Law enforcement searched the abandoned Land Rover and recovered, among other items, a black 9mm Hi-Point semi-automatic handgun, bearing serial number P1274479, loaded with seven rounds of 9mm ammunition, from the passenger side floorboard. PSR ¶ 16. In a nearby driveway, law enforcement also located the two purses from the Club with approximately $20,984 in cash. PSR ¶ 17. Law enforcement also recovered a discarded red, short-sleeved shirt, in a nearby trashcan. PSR ¶ 17. A short while later, the police apprehended a shirtless Lawrence as he was emerging from the alley near the driveway. PSR ¶ 17.    Pursuant to a search

---

[1] The Land Rover was stolen a week before the robbery from the parking lot of a restaurant located in Newark, New Jersey. Surveillance footage from the restaurant parking lot showed that, on August 30, 2015, Cooper drove to the restaurant parking lot and placed a call from his cellphone (the "Cooper Phone"). PSR ¶ 10. Minutes later, Blamahsah jumped over a nearby fence into the parking lot and stole the Land Rover. PSR ¶ 10. Telephone records confirmed that the Cooper Phone was in contact with a telephone number associated with Blamahsah (the "Blamahsah Phone"), and cell site location data showed that both the Cooper Phone and Blamahsah Phone were in the vicinity of the restaurant parking lot at the time of the theft. PSR ¶ 10.

incident to Lawrence's arrest, the police recovered, among other items, approximately $5,100 in cash, which was wrapped in the same manner as the cash that been stolen from the Club and that was recovered from the purses, as well as the Blamahsah Phone. PSR ¶ 17.

A search of the Blamahsah Phone showed that the user of the Blamahsah Phone and the user of the Cooper Phone exchanged text messages in the minutes leading up to the robbery. PSR ¶ 11. For example, the user of the Cooper Phone sent a text message directing an unknown co-conspirator to smuggle a firearm into the Club between his legs: "Tell bruh to put it between his legs and come back in." PSR ¶ 11. The users of the two phones also coordinated the exact timing of the robbery. PSR ¶ 12. The user of the Blamahsah Phone sent a text message, stating "[n]ext time [the Victim] swings back there." PSR ¶ 12. The user of the Cooper replied, "[t]his might be the last time." PSR ¶ 12. Telephone records confirmed that both the Blamahsah and Cooper Phones were in the vicinity of the Club around the time of the robbery. PSR ¶ 12.

The investigation further revealed that the license plate on the 2011 Land Rover was stolen from another Land Rover in Cranford, New Jersey, on September 4, 2015. PSR ¶ 18. Cell site location data confirmed that the Blamahsah Phone was in the vicinity of Cranford on or about that date. PSR ¶ 18.

### b. Procedural History

On November 2, 2016, Lawrence, Blamahsah, and Cooper were charged by Criminal Complaint. Dkt. No. 1.[2] Lawrence was in Connecticut State custody and therefore did not have an initial appearance before the Honorable James B. Clark, III, until March 9, 2017. Dkt. No. 21.

---

[2] Unless otherwise noted, docket citations are to the docket of the underlying criminal case, United States v. Lawrence, 17-cr-106 (MCA).

At his initial appearance, Paulette L. Pitt, Esq. ("Pitt"), was appointed as Lawrence's counsel pursuant to the Criminal Justice Act.  Dkt. No. 23.

On March 24, 2017, Lawrence and Cooper were charged a two-count Indictment with: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and (2) brandishing a firearm during and in relation to a crime of violence, namely, the Hobbs Act robbery charged in Count 1, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.[3]   Dkt. No. 28, attached hereto as Exhibit A.

On July 17, 2017, Pitt moved to withdraw as counsel, citing "fundamental disagreements with [Lawrence] on actions to be taken in th[e] matter." Dkt. No. 36-1 at 2.  This Court granted Pitt's motion, and on July 18, 2017, John A. Azzarello, Esq. ("Azzarello" or "counsel"), was appointed as Lawrence's counsel pursuant to the Criminal Justice Act.  Dkt. No. 40.

On September 7, 2017, Lawrence pleaded guilty to both counts of the Indictment pursuant to a plea agreement.[4] Dkt. No. 43.   Among other terms, the parties agreed to several factual stipulations contained in a Schedule A to the plea agreement, including that Lawrence "knowingly and willfully used or threatened the use of force, violence, or injury in order to obtain property from Victim 1," and that "[d]uring and in relation to the robbery, Lawrence and his co-conspirators

---

[3] On or about May 22, 2017, Blamahsah pleaded guilty to a two-count Information charging him with the same two offenses.   See United States v. Blamahsah, 17-cr-190 (MCA), Dkt. No. 34.  On or about October 3, 2017, This Court sentenced Blamahsah to a term of imprisonment of 66 months on Count 1, and a mandatory term of imprisonment of 84 months on Count 2 to run consecutively to the Count 1 sentence—a total sentence of 150 months.  Id., Dkt. No. 41.

[4] The case continued against Lawrence's co-defendant Cooper.  On or about August 13, 2018, Cooper was charged in a three-count Superseding Indictment with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and brandishing a firearm during a crime of violence, namely the Hobbs Act conspiracy and robbery charged in Counts 1 and 2 of the Superseding Indictment.  Dkt. No. 79.  On or about September 11, 2018, Cooper pleaded to Counts 1 and 2 of the Superseding Indictment. Dkt. No. 82.   On or about December 6, 2018, this Court sentenced Cooper to concurrent terms of imprisonment of 65 months on each of Counts 1 and 2.  Dkt. No. 89.

did knowingly use and carry a firearm, which was brandished, and did aid and abet the same." Plea Agreement, dated Aug. 2, 2017, at 8, attached to answer as Exhibit B. The parties also agreed that the total loss amount was approximately $26,084. Ex. B, at 8. Schedule A also contained a limited appellate waiver. Ex. B, at 8. In exchange for Lawrence's guilty plea to both counts of the Indictment, the Government agreed not to "initiate any further criminal charges against Lawrence for his participation in a robbery of a club located in Passaic, New Jersey, on or about September 6, 2015, and the use of any firearms in furtherance of that robbery." Ex. B, at 1. Lawrence additionally agreed that:

> in the event that . . . the judgment of conviction entered as a result of th[e] guilty plea does not remain in full force and effect . . . any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date th[e] agreement is signed by Lawrence may be commenced against him, notwithstanding the expiration of the limitations period after Lawrence signs the agreement.

Ex. B, at 2.

During the plea hearing, among other admissions, Lawrence allocuted that: (1) he "knowingly and willfully participate[d] in the robbery of the Passaic Club; (2) he and a co-conspirator "use[d] or threaten[ed] to use force, violence, or fear against the manager of the Passaic Club to commit the robbery"; (3) he or his co-conspirator "brandish[ed] a firearm during the robbery of the Passaic Club"; (4) he knew or agreed with his co-conspirator "in advance of the robbery that a firearm would be used to carry out the robbery of the Passaic Club"; and (5) he and his co-conspirator [took] approximately $26,084 in cash from the Passaic Club." *See* Plea Hr'g Tr., dated Sept. 7, 2017, at 15:23-16:15, attached to answer as Exhibit C.

In addition, the Court advised Lawrence that pursuant to the terms of the parties' plea agreement, Lawrence would not be able to appeal or otherwise challenge the Court's acceptance of the Schedule A factual stipulations. Ex. C, at 13:12-18.

On March 2, 2018, the parties again appeared before this Court for purposes of sentencing. At the sentencing hearing and in his sentencing memorandum, Azzarello argued that Lawrence should receive a two-point reduction for minor role, because he was neither "involved in the theft of the vehicle that was then used as the getaway car, nor in planning [the robbery], and planning to get the gun into the club in Passaic." Sent. Hr'g Tr., dated Mar. 2, 2018, at 6:8-10, attached to answer as Exhibit D. Azzarello characterized Lawrence's participation in the robbery as "a crime of opportunity that he was going to commit, without even knowing at that point that . . . Blamahsah and Cooper had planned to rob the club that night armed with a firearm." Ex. D, at 6:13-16.

This Court declined to apply the two-point reduction, finding that Lawrence "was squarely in the room while his co- defendant pointed a gun at the owner of the nightclub and robbed him, and not only the nightclub, but the pocketbooks that were in the room." Ex. D at 7:3-6. This Court distinguished Lawrence's role from that of "an unwitting getaway driver, waiting for [the robbers] under some false pretenses." Ex. D at 7:2-3. Having rejected Azzarello's minor role argument, this Court concluded that the applicable total Guidelines range was 141 to 151 months, based on an offense level of 18 and a Criminal History Category of VI, after the addition of 84 months to the low and high ends of the range to account for the Count 2 firearm charge. Ex. D, at 3:17-19. Azzarello further argued that Lawrence should receive a variance of approximately 12 to 24 months to account for a variety of factors, including his "unstable upbringing," Ex. D, at 15:12-13, drug and alcohol abuse, Ex. D, at 15:13-15, his newfound "devotion to Christianity," Ex. D, at 16:13, and otherwise trying to turning his life around such as by taking correspondence courses. Ex. D, at 19:1-3. This Court granted a slight variance of six months from the bottom of the applicable Guidelines range because of time he had previously served on an unrelated Connecticut State matter and his personal characteristics, Ex. D, at 30:19-25, and imposed a term

of imprisonment of 51 months on Count 1, and a mandatory term of imprisonment of 84 months on Count 2 to run consecutively to the Count 1 sentence—a total sentence of 135 months. Dkt. No. 59. At the end of the sentencing hearing, this Court also advised Lawrence of his "right to an appeal, subject to any pre-existing appellate waiver." Ex. D, at 32:24-25. On March 14, 2018, the Judgment of Conviction was filed.   Dkt. No. 62.

On or about November 7, 2018, Petitioner filed his motion for relief pursuant to 28 U.S.C. § 2255. *See* ECF No. 1. Petitioner initially asserted claims of ineffective assistance in connection with Azzarello's alleged failures to perfect a notice of appeal and consult with Petitioner about filing an appeal. *See* ECF No. 1, Motion at 2-3. On or about March 4, 2019, Petitioner submitted an Amended Motion on the proper form, reasserting the ineffective assistance of counsel claims and seeking relief based on a substantive change in law due to the Supreme Court's decision in *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018). *See* ECF No. 6, Amended Motion. In August 2019, Petitioner wrote to advise the Court of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) (holding that the residual clause in 18 U.S.C. § 924(c)'s definition of "crime of violence" was void for vagueness). ECF No. 8.

In the meantime, the government sought and received several extensions of time and filed its answer on November 26, 2019, which included a certification from Azzarello. ECF Nos. 9-13.

On December 26, 2019, Petitioner filed a traverse, which 1) sought to abandon his ineffective assistance of counsel claims and 2) provided further support of his *Davis* claim. ECF No. 14. On April 18, 2022, Petitioner filed a motion, reiterating the request to withdraw his ineffective assistance claims and providing support for his *Davis* claim. ECF No. 17. At this time, the Court deems the ineffective assistance of counsel claims withdrawn, and will consider Petitioner's arguments for relief as to his *Davis* claim.

## II. STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

The Court may dismiss the motion without holding an evidentiary hearing where the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Moreover, the Third Circuit has "repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citations omitted).

## III. DISCUSSION

On June 26, 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591 (2015).[5] On April 17, 2018, the Supreme Court held that a similarly-worded provision of 18 U.S.C. § 16(b) was also unconstitutionally vague. *See Sessions v. Dimaya*, 138 S. Ct. 1204, (2018). On June 24, 2019, the Supreme Court held that the residual clause in 18 U.S.C. § 924(c)'s definition of "crime of violence" was also void for vagueness. *United States v. Davis*, 139 S. Ct. 2319 (2019).

Petitioner argues that the Court must vacate his § 924(c) conviction because Hobbs Act conspiracy no longer constitutes a "crime of violence" after *Davis*. "Prior to *Davis*, there were two statutory avenues available for determining an offense to be a crime of violence under § 924(c): either through what is called the 'residual' clause or through the elements clause of the statute." *United States v. Walker*, 990 F.3d 316, 324 (3d Cir. 2021) (citing 18 U.S.C. § 924(c)(3)). "The residual clause define[d] a 'crime of violence' as 'an offense that is a felony and – that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Id.* (quoting 18 § 924(c)(3)(B)). *Davis* voided the residual clause for vagueness but left the elements clause intact. "[An] offense is now a 'crime of violence' within the meaning of the statute only if it meets the definition contained in the elements clause," which "defines a 'crime of violence' as 'an offense that is a felony and – has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)).

---

[5] *Johnson* announced a new rule of constitutional law made retroactive to cases on collateral review. *See Welch v. United States*, 578 U.S. 120 (2016).

The Government concedes that Hobbs Act conspiracy is not a "crime of violence" after *Davis* but argues that Petitioner procedurally defaulted on his claim by failing to file a direct appeal. Under the procedural default doctrine, a guilty plea may not be collaterally attacked unless first challenged on direct review; if a defendant fails to do so, the § 2255 claim is considered procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). The purpose of this doctrine is to promote the "important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A defendant may surmount this bar by showing cause to excuse the default, as well as resulting prejudice should the default be given preclusive effect. *See id.* (collecting cases); *United States v. Doe*, 810 F.3d 132, 153 (3d Cir. 2015).

A defendant may overcome a procedural default by demonstrating either (1) "'cause' and actual 'prejudice,'" or (2) actual innocence. *See Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). A court may find "cause" where a claim "is so novel that its legal basis [was] not reasonably available to counsel" at the time of direct review. *See id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). That scenario can occur when the Supreme Court overturns "a longstanding and widespread practice to which th[e] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." *See Reed*, 468 U.S. at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).

Here, it is undisputed that Petitioner did not file a direct appeal.[6] Accordingly, Petitioner's claim is barred from review absent a showing of cause and prejudice or actual innocence. *See United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003). Courts in this circuit "have determined that Section 2255 motions premised on the Supreme Court's decision in *Johnson* implicated the

---

[6] Moreover, Petitioner has abandoned his ineffective assistance claims regarding his counsel's alleged failure to file an appeal or consult with him about an appeal.

novelty exception" and noted that "it is at least plausible that the same rationale that supported the novelty exception for *Johnson* motions would support its application to *Davis* motions." *United States v. Scott*, 521 F. Supp. 3d 538, 545 (M.D. Pa.) (citing cases), appeal filed, No. 21-1539 (3d Cir. Mar. 22, 2021). Thus, it stands to reason that Petitioner has established cause for failing to raise a vagueness challenge to Section 924(c)'s residual clause on direct review, because the state of the law at the time of his appeal, after *Johnson* but prior to *Dimaya* and *Davis*, did not offer a reasonable basis upon which to challenge the guilty plea. *See Reed v. Ross*, 468 U.S. 1, 17 (1984). The Court assumes without deciding that Lawrence has established sufficient cause to excuse the procedural default of this claim.

Nevertheless, Lawrence is not able to establish actual prejudice or actual innocence sufficient to overcome the procedural default. Actual prejudice means that the error alleged in the § 2255 motion "worked to [a defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A mere "possibility of prejudice" is insufficient. *Frady*, 456 U.S. at 170. When challenging a guilty plea, a defendant must show that the error was a "fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See United States v. Timmreck*, 441 U.S. 780, 783 (1979). Actual innocence requires "factual innocence." *Bousley*, 523 U.S. at 623. "[M]ere legal insufficiency" is not enough to meet this standard. *Id.* For a conviction stemming from a plea agreement where the government dismissed more serious charges during plea bargaining, a defendant's "showing of actual innocence must also extend to those charges." *Id.* at 624. To meet this standard, a defendant "must show that it is more likely than not

that no reasonable juror would have found [him] guilty." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).

Here, Lawrence is unable to overcome the procedural default because he cannot show he was actually prejudiced or his factual innocence. Moreover, even if the Court were to address his claim on the merits, Lawrence's claim fails because his admissions at his plea colloquy, which track the factual stipulations in his plea agreement, establish that he committed a Hobbs Act robbery, even if he was not separately charged or convicted of that offense. "It is well settled that, '[i]n a prosecution under [§ 924(c)], the Government must prove that the defendant committed a qualifying predicate offense ... but it is not necessary that the defendant be separately charged with or convicted of such an offense.'" *United States v. Collazo*, 856 F. App'x 380, 383 (3d Cir. 2021) (quoting *United States v. Lake*, 150 F.3d 269, 274-75 (3d Cir. 1998)) (alterations and omission in original). Indeed, a conviction under § 924(c) only requires "legally sufficient proof that the predicate crime of violence ... was committed." *Johnson v. United States*, 779 F.3d 125, 130 (2d Cir. 2015). Courts looks to "the actual proffer, plea hearing, and other evidence in the record to determine if a qualifying predicate offense was committed." *Collazo*, 856 F. App'x. at 383. Thus, as the government contends, Petitioner's § 924(c) conviction remains valid so long as there is legally sufficient proof he committed a Hobbs Act robbery.

A person is guilty of Hobbs Act robbery if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of [the statute]." 18 U.S.C. § 1951(a). The Hobbs Act defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the

presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property[.]" 18 U.S.C. § 1951(b)(1).

Count Two of the Indictment, the § 924(c) charge, references Hobbs Act robbery, albeit as charged in Count One of the Indictment. *See* Dkt. No. 28, Indictment at 3. The plea agreement includes factual stipulations that Lawrence "knowingly and willfully used or threatened the use of force, violence, or injury in order to obtain property from Victim 1," and that "[d]uring and in relation to the robbery, Lawrence and his co-conspirators did knowingly use and carry a firearm, which was brandished, and did aid and abet the same." Exhibit B at 8.

Most tellingly, at his plea hearing, Lawrence admitted under oath to conduct supporting a completed Hobbs Act robbery and the Section 924(c) conviction predicated on that offense. Petitioner made the following factual admissions at his plea hearing:

> MS. LOU: Thank you.
> Mr. Lawrence, on or about September 6, 2015, did you agree with at least one other person to take money from a club located in Passaic, New Jersey without the consent of the Passaic Club or any agent of the Passaic Club, including the manager?
> THE DEFENDANT: Yes.
> MS. LOU: On or about September 6, 2015, did you knowingly and willfully participate in the robbery of the Passaic Club?
> THE DEFENDANT: Yes.
> MS. LOU: Did you and your co-conspirator use or threaten to use force, violence, or fear against the manager of the Passaic Club to commit the robbery?
> THE DEFENDANT: Yes.
> MS. LOU: In fact, did you or your co-conspirator brandish a firearm during the robbery of the Passaic Club?

>THE DEFENDANT: Yes.
>
>MS. LOU: Did you know or agree with your co-conspirator in advance of the robbery that a firearm would be used to carry out the robbery of the club?
>
>THE DEFENDANT: Yes.
>
>MS. LOU: Did you and your co-conspirator take approximately $26,084 in cash from the Passaic Club?
>
>THE DEFENDANT: Yes.
>
>MS. LOU: Did you then leave the club with the cash and flee with your co-conspirator in a getaway car?
>
>THE DEFENDANT: Yes.
>
>MS. LOU: Did you know that what you were doing was unlawful?
>
>THE DEFENDANT: Yes, I did.
>
>MS. LOU: Are you pleading guilty to the charged offenses in the indictment because you are, in fact, guilty of each offense with which you have been charged?
>
>THE DEFENDANT: Yes, I am.

See Ex. C, at 15:16-16:25

As shown above, Lawrence admitted that he and a co-conspirator used or threatened to use force, violence, or fear against the manager of the Club to rob approximately $26,084 from the Club, that a firearm was brandished during the robbery, and that Lawrence knew in advance a firearm would be used to carry out the robbery.[7] Lawrence's admissions satisfy all of the elements of Hobbs Act robbery, as well as brandishing a firearm during and in relation to that robbery, both

---

[7] The latter admission implicates aider-abettor liability. Under the accomplice liability theory, "[a]n active participant" in a valid predicate offense can be convicted of "aid[ing] and abet[ting] a § 924(c) violation when he knows that one of his confederates will carry a gun." *Rosemond v. United States*, 572 U.S. 65, 77 (2014); *see also Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021) (holding that a § 924(c) defendant "could be found vicariously liable for his co-conspirators' actions under *Pinkerton*" coconspirator liability).

charges which the Government agreed to forego during the course of plea bargaining.  *See* Ex. B, at 1.  As such, Lawrence's Section 924(c) conviction is supported by sufficient evidence that he committed a Hobbs Act Robbery and not merely a conspiracy to commit Hobbs Act Robbery.  And that is dispositive here because Hobbs Act robbery, unlike conspiracy to commit Hobbs Act Robbery, remains a predicate felony crime of violence for Section 924(c) after *Davis*.  *See United States v. Walker*, 990 F.3d at 325 ("Hobbs Act robbery is indeed a crime of violence for purposes of § 924(c)."), abrogated on different grounds by *United States v. Taylor*, 142 S.Ct. 2015, 2020 (2022).[8]

For these reasons, the Court denies relief on Lawrence's *Davis* claim.

IV.   **CONCLUSION**

The Court grants Lawrence's request to withdraw his ineffective assistance claims, denies the Motion, and denies a certificate of appealability, as reasonable jurists would not find the Court's assessment debatable.  *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: July 25th, 2022.

---

[8] In *Walker*, the Third Circuit also held that <u>attempted</u> Hobbs Act robbery is categorically a crime of violence under § 924(c).  *Id.* at 330 ("We thus follow the majority rule that attempted Hobbs Act robbery is categorically a crime of violence under § 924(c)").  This portion of the Third Circuit's holding was abrogated by *United States v. Taylor*, 142 S.Ct. 2015, 2020 (2022) ("Whatever one might say about completed Hobbs Act robbery, attempted Hobbs Act robbery does not satisfy the elements clause.").